UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CALEATHA S. GIBSON, ) | Civil Action No.: 4:19-cv-0084-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **ORDER** |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security; ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned by voluntary consent pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

**A.     Procedural History**

Plaintiff has a prior unappealed final decision alleging an onset date in 2009 with the decision date being August 2013. Plaintiff filed an application for DIB on January 23, 2015 and SSI on December 2, 2014, alleging inability to work since July 8, 2009. (Tr. 23). Plaintiff purports that at the hearing "Plaintiff asked for consideration of [an] amended alleged onset date of January 22,

2015." (ECF No. 15 at 4). There is no discussion by the ALJ of an actual amendment of the alleged onset date. Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on October 5, 2017, at which time, a vocational expert (VE) and Plaintiff testified. (Tr. 41). The Administrative Law Judge (ALJ) issued an unfavorable decision on December 12, 2017, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 23-33). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on November 15, 2018, making the ALJ's decision the Commissioner's final decision. Plaintiff filed this action on January 10, 2019. (ECF No. 1).

**B.      Plaintiff's Background and Medical History**

Plaintiff was born on May 27, 1971, and was thirty-eight years old at the time of the original alleged onset date. (Tr. 31). Plaintiff alleges disability originally due to depression, migraines, high cholesterol, pinched nerve, insomnia, anemic, knees, shoulder/back pain, diverticulitis, and arthritis. (Tr. 101). Only relevant records will be summarized under pertinent issue headings.

**C.      The ALJ's Decision**

In the decision of December 12, 2017, the ALJ made the following findings of fact and conclusions of law (Tr. 23-33):

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.

2.  The claimant has not engaged in substantial gainful activity since July 8, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: depression, generalized anxiety disorder, anemia, lumbar degenerative disc disease, migraines, right shoulder impingement and degenerative changes in the bilateral knees (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally climb ladders, ropes or scaffolds and ramps or stairs. The claimant can occasionally balance, stoop, knee, crouch and crawl. The claimant must avoid all exposure to hazards such as dangerous machinery and unprotected heights. She can frequently reach overhead with the right upper extremity. The claimant is able to complete simple, routine tasks, involving simple work-related decisions with few workplace changes and no fast-paced productivity requirements. The claimant can occasionally interact appropriately with coworkers, supervisors and the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 27, 1971 and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 8, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ committed reversible error in failing to expressly consider Plaintiff's medication side effects in accordance with SSR 16-3p; in failing to follow 20 C.F.R. § 404.1527 by not weighing Dr. Kamel's opinion; and in failing to explain how the "frequently" in the RFC of

3

frequently reach overhead with the right was determined. Defendant argues the ALJ supported the RFC with citation to substantial evidence.

**A.     LEGAL FRAMEWORK**

   **1.     The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5)

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S.

whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*,

---

521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

² In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**B.     ANALYSIS**

**Subjective Symptom Evaluation: Medication Side Effects/Fatigue**

Plaintiff argues the ALJ committed reversible error in failing to expressly consider Plaintiff's

medication side effects, in accordance with SSR 16-3p. Defendant argues substantial evidence supports the subjective symptom evaluation and if it were error to not explicitly discuss Plaintiff's alleged drowsiness as a medication side effect, no harm can be established by Plaintiff.

SSR 16-3p is applicable to cases decided after its effective date, such as this case. *See Morton v. Berryhill*, No. 8:16-cv-0232-MBS, 2017 WL 1044847, *3 (D.S.C. Mar. 20, 2017). Although SSR16-3p eliminates usage of the term "credibility" because the regulations do not use the term, the assessment and evaluation of Plaintiff's symptoms requires usage of most of the same factors considered under SSR96-7p.

Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595.

The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce his capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, an individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record." SSR 16-3p, at *11.

Plaintiff testified to laying down a lot during the day. (Tr. 53). Plaintiff takes Gabapentin 800mg three times a day. (Tr. 56). Plaintiff reported side effects of dizziness, drowsiness, dry mouth, jittery, and heart racing. (Tr. 56). Plaintiff reported anemia caused her to be tired and weak all the

time. (Tr. 57). Plaintiff lies down five hours during the day. (Tr. 59). In a function report, Plaintiff did not report names of medication or side effects and just wrote at the heading "all of them [because] I have digestive problems." (Tr. 361). In April 2014, Plaintiff reported to the ER that she was fatigued. (Tr. 463). Plaintiff reported to SSA in August 2015 that she had various side effects from all medication, including anxiety, nausea, dry mouth, sweating, drowsiness, cramps, dizziness, and heart racing then slowing. (Tr. 368). Plaintiff reported being fatigued. (Tr. 369). In an October 2015 report to SSA, Plaintiff reported side effects much the same with a list of medications. (Tr. 380). In August 2015 and March 2016, Plaintiff was seen by Dr. Kamel and reported no fatigue. (Tr. 705, 830, 858). In September 2015, Plaintiff reported no fatigue. (Tr. 779). In October 2015, Plaintiff reported feeling tired. (Tr. 798). At a December 2015 examination, Plaintiff reported fatigue. (Tr. 725). In a February 2016 report to SSA, Plaintiff reported side effects from medication similar to other reports. (Tr. 391-92).

Treatment notes on February 24, 2014 from Dr. Kamel indicated no side effects from medication. (Tr. 544). It is noted Plaintiff had narcotic overuse, taking too much Norco and Vicodin through separate physician prescriptions. (Tr. 544). Plaintiff was counseled at length regarding medications, use, misuse, and drug rebound but was "still continuing in the same pattern." (Tr. 544). Plaintiff was seen for anemia in April 2014 and denied any problems. (Tr. 562). Plaintiff received IV iron therapy with no complaints. (Tr. 566). Plaintiff was seen by mental health in February 2015; no medication concerns were noted. (Tr. 571). In March 2015, Plaintiff presented for follow up for pain medication and she was "doing well on same" with no complaints. (Tr. 579). It was noted "responding well to pain medication use." (Tr. 580). In March 2015, notes from Dr. Kamel indicate medications were working well for Plaintiff and Plaintiff was to be followed very closely due to

9

narcotic overuse concern in the past. (Tr. 617). In June and July 2015, Plaintiff was doing well on current medication regimen. (Tr. 689). Plaintiff was able to perform her activities of daily living with reasonable comfort. (Tr. 689). In August 2015, it is noted Plaintiff presented the same day for pain medication refills and left before she was seen; she had broken her pain contract and was no longer able to get medication at NP Beaudry's office. (Tr. 685). "[H]er original request for pain medication was marginal at best." Plaintiff was referred to pain management. (Tr. 686).

In October 2015, it is noted Plaintiff's pain was controlled by medication and anxiety/depression controlled with medications. Plaintiff reported feeling tired. (Tr. 798). Plaintiff had brought her medications with her and did not report medication side effects to the examiner Dr. Janit in December 2015. (Tr. 724). In November and December 2015, Dr. Kamel noted Plaintiff had no side effects and medication was continued. (Tr. 845-46). In January 2016, Plaintiff presented to FNP Brown upset that she had not been given pain medication yet. (Tr. 802). It was noted she would be referred to pain management. (Tr. 802). In February 2016, Plaintiff reported dry mouth from her mental health medications. (Tr. 901). Plaintiff reported to her mental health provider that when she was on neurontin she thought it caused a heart flutter. Plaintiff reported low energy due to low iron. (Tr. 901). In April 2016, Plaintiff reported to her mental health provider that she had itching from a new medication received from orthopedist. (Tr. 903). In March 2017, Plaintiff complained to mental health that she had dry mouth and dizziness as side effects from Prozac and Vistaril. (Tr. 934).

The ALJ noted as to fatigue: "The claimant had a right shoulder impingement, degenerative changes in the bilateral knees and degenerative disc disease, which reasonably limit the claimant to sedentary. Symptoms from the claimant's anemia such as fatigue contribute to this exertional

limitation." (Tr. 30).

Notes by treating providers who provided prescriptions for Plaintiff's medications generally noted no side effects or did not note side effects and continued to prescribe medications. There are also notes of Plaintiff responding well to her medication regimen. While Plaintiff made two reports in 2016 to mental health professionals regarding medication side effects of medication not prescribed by mental health and two complaints regarding mental health medication side effects, there was no discussion by the providers of any change in medication or notations of any side effects reported. Additionally in the ALJ's discussion of mental impairments, the ALJ noted that "the medication management and therapy for the claimant's condition did not suggest a need for greater limitations." (Tr. 30).

The ALJ considered other factors under SSR 16-3p in her subjective symptom evaluation, and found Plaintiff's reports of intensity, persistence, and limiting effects of symptoms were not entirely consistent with the medical evidence and other evidence in the record. The ALJ went on to discuss the record evidence after finding the objective medical evidence and Plaintiff's "course of treatment did not support the extent of her allegations." (Tr. 28-31). The ALJ repeatedly noted the conservative management of Plaintiff's mental and physical conditions, including management through medication. In restricting the RFC to sedentary work, he noted fatigue as a symptom contributing to that restriction. If there was error by the ALJ in not expressly discussing Plaintiff's testimony and scant reports of medication side effects under SSR 16-3p for the one factor of "the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms" of the seven factors of SSR 16-3p, such would be harmless error, considering the opinion as a whole, as substantial evidence cited by the ALJ supports the subjective

symptom evaluation and the record does display inconsistency with Plaintiff's allegations regarding medication.

This issue is without merit.

**Dr. Kamel's Statement**

Plaintiff argues the ALJ did not follow 20 C.F.R. § 404.1527 in failing to weigh Dr. Kamel's opinion. Defendant argues Dr. Kamel did not offer an opinion of what Plaintiff could or could not do as to headaches and there was no need to assign weight to the statements, citing 20 C.F.R. § 404.1527(a)

On November 3, 2015, Dr. Kamel, Plaintiff's treating neurologist, completed a Headache RFC Questionnaire. (Tr. 718). Diagnosis was mixed headache pattern and lumbar spine radiculopathy. In the past, Plaintiff's headaches were almost daily but were now down to monthly, mostly mild to moderate and much less frequent. (Tr. 718). Plaintiff had two headaches a month, lasting about two to four hours. (Tr. 719). Symptoms associated with headaches appear to include photosensitivity and some decreased concentration. (Tr. 718).[3] Triggers of headaches include bright lights, lack of sleep, stress, noise, and strong odors. (Tr. 719). Lying in a dark room and massage improved Plaintiff's headaches. Positive results/objective signs were impaired sleep and impaired appetite; there is an arrow and an illegible two letters besides MRI. (Tr. 719). Under the question "please describe any other limitations(such as limitations in the ability to sit, stand, walk, lift, bend, stoop, crouch, limitations in using arms, hands, fingers, limited vision, difficulty hearing, need to avoid temperature extremes, wetness, humidity, noise, dust, fumes, gases, or hazards, etc.) that would affect your patient's ability to work at a regular job on a sustained basis," Dr. Kamel answered

---

[3] Some of the symptom descriptions are difficult to decipher.

"low back pain, has pinched nerve." MRI was an additional test advised to fully assess impairments. (Tr. 720).

Medical opinions are statements from acceptable sources that reflect judgments about what you can still do despite impairments and about your physical or mental restrictions. 20 C.F.R. § 404.1527. The ALJ did not err in not weighing Dr. Kamel's statement because it does not appear to be an opinion within the administration's regulatory definition. Moreover, while Dr. Kamel's statement is on a form entitled Headaches RFC Questionnaire, it contains no opinion on functional limitations. Even if the ALJ erred in not assigning weight to Dr. Kamel's statement, such error is harmless where Dr. Kamel did not opine to any functional limitations and no effect on the outcome can be shown.[4] *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir.1994) (applying harmless error analysis in Social Security case); *see also Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000) (holding that a remand is not necessary if it would "amount to no more than an empty exercise"); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); *Austin v. Astrue*, 2007 WL 3070601, *6 (W.D.Va. Oct.18, 2007) (holding that "[e]rrors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error").

This issue is without merit.

**RFC: Frequency of Overhead Reaching**

Plaintiff argues the ALJ committed reversible error in not explaining how the "frequently"

---

[4] Moreover, Defendant points out that the ALJ considered the questionnaire, citing to Exhibit 19F, and found Plaintiff's migraines severe but improved with conservative treatment. (Tr. 30, 26-30)

in the RFC of frequently reach overhead with the right was determined. Defendant argues the ALJ reviewed the entire record of objective evidence and discussed exams of 5/5 strength and normal exams and that Plaintiff fails to cite evidence other than subjective allegations regarding reaching. Defendant argues the ALJ supported the RFC with citation to substantial evidence.

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

The ALJ found Plaintiff's right shoulder impingement as a severe impairment. (Tr. 26). The RFC included a limitation of frequently reach overhead with the right upper extremity. (Tr. 28). The ALJ discussed medical evidence addressing the right shoulder impairment and the Plaintiff's testimony regarding the right shoulder. The ALJ noted: "In 2012, the claimant had a procedure

secondary to right shoulder impingement (Exhibit B25F/28), and an EMG test in April 2013 noted a right ulnar nerve lesion (Exhibit B4F/22). Based on these findings, the undersigned finds the overhead reaching limitation limited to right side." (Tr. 29). The ALJ noted later 5/5 strength examinations and unremarkable EMG without referencing which extremity. (Tr. 29).[5] The ALJ noted: "The claimant's degenerative findings also supported the postural limitations; the undersigned finds less restrictive postural limitations because more recent findings and treatment showed mostly normal physical exams (See Exhibit B7F and Exhibit B10F). The undersigned has included the restriction related to hazards to provide for her safety in the workplace related to decreased range of motion. Furthermore, the claimant had findings in her right upper extremity consistent with an overhead reaching restriction on the right side." (Tr. 30).

Plaintiff testified she still has pain in her shoulder. (Tr. 57). A 2010 EMG prior to 2012 shoulder surgery showed a mild elbow lesion and was otherwise unremarkable. (Tr. 823). In January 2013, Plaintiff's surgeon noted her shoulders were doing much better. (Tr. 889). In April 2013, Dr. Kamel noted Plaintiff had orthopedic issues with right shoulder and if she did not exercise or move her joints in the right hand she would worsen regarding joint stiffness and crepitus. (Tr. 828). There were only right wrist and hand findings on exam, not shoulder. In August 2013, Plaintiff had 5/5 strength. (Tr. 829). In March 2014, Plaintiff was seen at the ER for right arm pain after falling. (Tr. 442). Plaintiff had an elbow contusion. (Tr. 445). In January 2015, Plaintiff complained of right shoulder problem after a fall to Dr. Holford, her prior surgeon. (Tr. 490). Exam was "abducts 90 degrees forward flexes the 170 degrees tenderness medial scapula positive impingement neurological

---

[5] The unremarkable EMG cited by the ALJ found at Exhibit B10F is dated January 2015 and refers to Plaintiff's <u>left</u> shoulder.

exam is intact." (Tr. 492). X-ray of shoulder showed "subacromial space glenohumeral joint a.c. joint soft tissues unremarkable." (Tr. 492). The ALJ also considered the state agency consultants' opinions that Plaintiff could not perform frequent overhead reaching, but gave them little weight because their opinions were not supported by the overall record. (Tr. 30, 115, 160).[6] In August 2015, upon exam, Dr. Kamel found 5/5 right upper extremity and shoulder strength and rotation. (Tr. 706). In August 2015, Dr. Kamel noted Plaintiff had 5/5 strength in all categories of right shoulder, range of motion, abduction, and rotation. (Tr. 833). In February 2014, June 2014, April 2015, March 2015, November 2015, and February 2016, upon exam, Plaintiff had 5/5 strength in all extremities. (Tr. 543-44, 617, 635, 845, 849).

The VE testified as to the first hypothetical that included sedentary and frequently overhead reach with the right upper extremity, available jobs would be document preparer, DOT 240.587-018; check weigher, DOT 737.687-026, and final assembler, DOT 713.687-018. (Tr. 67-69). The VE testified that her testimony was consistent with DOT except for time off task and absences. (Tr. 70). As to available work at Step Five, the ALJ found:

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a document preparer (DOT# 249.587-018, SVP 2, sedentary, 103,000 jobs nationally), a check weigher (DOT# 737.687-026. SVP 2, sedentary, 14,000 jobs nationally) and a final assembler (DOT# 713.687-018, SVP 2, sedentary, 7000 jobs nationally).
>
> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. The DOT is silent on the issue of overhead reaching on one side. The vocational expert supplemented the information with the DOT based on her experience and background (Exhibit B14E), and the undersigned accepts this

---

[6] The state agency reviewing consultants had not found a sedentary RFC, but found Plaintiff was limited to light exertion and found available jobs based on light and no frequent reaching overhead on right. (Tr. 159).

16

testimony based on her experience.

(Tr. 32).

SSR 96-9p, regarding implications of an RFC of less than full range of sedentary, provides, relevant to Plaintiff who was aged in her thirties:

> The impact of an RFC for less than a full range of sedentary work is especially critical for individuals who have not yet attained age 50. Since age, education, and work experience are not usually significant factors in limiting the ability of individuals under age 50 to make an adjustment to other work, the conclusion whether such individuals who are limited to less than the full range of sedentary work are disabled will depend primarily on the nature and extent of their functional limitations or restrictions.

SSR 96-9p, 1996 WL 374185. A limitation in reaching is a nonexertional limitation that would cause an RFC to be less than a full range of sedentary. *Id.* There was no hypothetical asked of the VE if right overhead reaching was limited to occasional whether any jobs would be available or not.[7]

While the ALJ discussed records involving Plaintiff's shoulder and explained reasons for an overhead reaching limitation generally, the ALJ did not explain how the frequency of "frequently" was determined in the RFC and with reference to physical findings related to the right shoulder may have relied on medical evidence not consistent with his finding regarding "more recent findings." Without resolution by the ALJ of conflicting evidence as to Plaintiff's shoulder impairment and without a reasoned explanation for the determination of "frequently" as opposed to "occasionally" or "constantly" as to right overhead reaching, the court is "left to guess about how the ALJ arrived at h[er] conclusions," and, as a result, cannot meaningfully review them. *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015). Remand is required on this issue.

---

[7] There may be additional error on the face of the ALJ's opinion as the check weigher job per the DOT requires constant reaching. *See Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015). This should be addressed by the ALJ on remand.

17

## III. CONCLUSION

The court is constrained by its limited function under 42 U.S.C. § 405(g). Our function is to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). As discussed above, the ALJ's decision is not based on substantial evidence.[8]

"We cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235–36 (4th Cir. 1984)(citing *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir.1980); *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir.1979); *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir.1977)). "The ALJ is not required to discuss every piece of evidence, but if he does not mention material evidence, the court cannot say h[er] determination was supported by substantial evidence." *Seabolt v. Barnhart*, 481 F. Supp. 2d 538, 548 (D.S.C. 2007)(citing *Arnold v. Sec'y*, 567 F.2d 258, 259 (4th Cir.1977) ("The courts ... face a difficult task in applying the substantial evidence test when the Secretary has not considered all relevant evidence. Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that h[er] decision is supported by substantial evidence approaches an abdication of the court's duty....")).

---

[8] Remand, rather than reversal, is required when the ALJ fails to explain her reasoning and there is ambivalence in the medical record, precluding a court from "meaningful review." *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir.2013).

Due to the errors in the ALJ's decision as to the RFC reaching limitation, it is appropriate to remand to the Commissioner for further action.

It may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and this case is REMANDED to the Commissioner for further administrative action as set forth above.

                                                s/Thomas E. Rogers, III

March 12, 2020                                  Thomas E. Rogers, III
Florence, South Carolina              United States Magistrate Judge